UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GINA H.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:20-cv-01719-YY

OPINION AND ORDER

YOU, Magistrate Judge

    Plaintiff Gina H. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION AND ORDER

**PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB on June 21, 2017, alleging disability beginning on July 30, 2014. Tr. 175. Her application was initially denied on October 31, 2017, and upon reconsideration on April 12, 2018. Tr. 109-13, 119-21. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on October 10, 2019. Tr. 31-72. After receiving testimony from plaintiff and a vocational expert, the ALJ issued a decision on October 28, 2019, finding plaintiff not disabled within the meaning of the Act. Tr. 13-25. The Appeals Council denied plaintiff's request for review on July 30, 2020. Tr. 1-6. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

**SEQUENTIAL ANALYSIS AND ALJ FINDINGS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 30, 2014. Tr. 16. At step two, the ALJ determined plaintiff suffered from the following severe impairments: dysfunction of major joints, degenerative disc disease, right hip replacement, and obesity (20 CFR 404.1520(c)). *Id*. The ALJ recognized other impairments in the record, i.e., history of bypass, hypertension, obstructive sleep apnea, depressive disorder, anxiety disorder, posttraumatic stress disorder ("PTSD"), and history of panic attacks, but concluded these conditions were non-severe. *Id*.

The ALJ found plaintiff's mental impairments, considered singly or in combination, did not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities. Tr. 16. Regarding the mental impairment finding, the ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria, used to evaluate mental disorders. Tr. 16-17; 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as

defined in 20 C.F.R. § 404.1567(b) except she can stand/walk four hours out of an eight-hour day, she cannot climb ropes/ladders/scaffolds, she can occasionally perform all other postural activities, and she can occasionally reach overhead with the left dominant hand. Tr. 18.

At step four, the ALJ found plaintiff was able to perform past relevant work as an administrative assistant and merchandise distributor. Tr. 23.

At step five, the ALJ alternatively found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy including: office helper, inspector, and cashier II. Tr. 24. Thus, the ALJ concluded plaintiff was not disabled at any time from July 30, 2014, through September 30, 2018, the date last insured. Tr. 25.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting her subjective symptom testimony, evaluating the medical opinion evidence, and rejecting lay witness testimony.

**I.      Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."

The decision under review is dated October 28, 2019. Tr. 25. Therefore, SSR 16-3p applies.

The ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" and did not identify evidence of malingering. Tr. 18.  However, the ALJ concluded plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The ALJ discounted plaintiff's statements based on the objective medical evidence. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").  However, "[a]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. " *Brown-Hunter v. Colvin*, 806 F. 3d 487, 489 (9th Cir. 2015).  Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony. " *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also Orteza*, 50 F.3d at 750 (holding the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

The ALJ first noted that plaintiff testified she could walk a block and sit for twenty minutes, and could not crawl, stoop, bend, or lift.  Tr. 18.  The ALJ then cited extensively to the

6 – OPINION AND ORDER

medical record to illustrate inconsistencies between plaintiff's testimony and the medical evidence.

Specifically, the ALJ cited a March 2015 chart note where plaintiff was seen for complaints of right hip pain, but she exhibited normal gait. Tr. 18 (citing Tr. 353, 355). The ALJ observed that the chart note reflected plaintiff had right side inguinal pain and point tenderness on palpation of the hip and femoral region, but the hip x-ray was negative for fracture or dislocation. Tr. 18-19 (citing Tr. 353, 355). Further, the ALJ observed March 2015 x-rays of the lumbar spine showed only mild disc space narrowing at L4-5. Tr. 19 (citing Tr. 370). Indeed, the rest of the x-ray report indicated "no lumbar compression fracture or spondylolisthesis," "no transverse process fracture," no "lytic or blastic bone destructon," no "evidence for spondylosis at the L5 pars or elsewhere," no malalignment, "no heavy spurring or disc space narrowing or facet arthritis," and the T12 and S1 looked "grossly intact." Tr. 370.

The ALJ recognized plaintiff reported that her hip pain worsened after a motor vehicle accident in October 2015. Tr. 19 (citing Tr. 401). The ALJ also noted that x-rays taken in November 2015 showed moderately severe degenerative changes with loss of superior cartilage space and sclerosis of both subchondral surfaces. *Id*. (citing Tr. 411). The ALJ further recognized that in May 2016, plaintiff reported persistent, severe pain from bilateral hip arthritis that had worsened over the past several months. *Id.*

However, the ALJ concluded that plaintiff's activities were inconsistent with her testimony regarding the severity of her complaints. An ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to (1) show that the activities contradict other testimony or (2) demonstrate that the activities meet the threshold for

7 – OPINION AND ORDER

transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ did both.

The ALJ cited to June 2016 records reflecting that plaintiff was "generally feeling well, was enrolling in school and was continuing to work as a private chef." Tr. 19 (citing Tr. 481). The ALJ also pointed to August 2016 treatment notes reflecting plaintiff was a private chef, as well as a college student in interior design. *Id.* (citing Tr. 423). Additionally, the ALJ pointed to plaintiff's reports of a weekend in April 2017 where she did "a lot of walking around Seattle," another "really busy weekend" in May 2017 that included walking around the Japanese garden, shopping, and going to the art museum where she sat on the floor and sketched and went up and down stairs, and school work in June 2017 that included "sitting a lot" and "working and studying for finals." *Id.*; *see* Tr. 42, 250, 540, 543. The ALJ contrasted all of this with plaintiff's testimony that she could only walk a block. *Id.*

The ALJ further observed that, during her hearing, plaintiff testified she attended college full-time from 2016 to 2018, taking twelve to fifteen credits until she completed her degree. Tr. 19; *see* Tr. 37 (testimony by plaintiff that she completed her AAS degree in interior design in June 2019); Tr. 48 (plaintiff's testimony that she attended school three or four days per week). The ALJ concluded that plaintiff's "full-time schooling is akin to full-time work and not suggestive of disabling impairment." Tr. 19.

The ALJ recognized that the record reflected an increase of symptoms in August 2017; however, as the ALJ observed, after her total right hip replacement in October 2017, plaintiff was able to walk for about an hour before needing a break. *Id.* (citing Tr. 507 ("Pt says she can walk casually for about an hour before she needs to stop and take a break.")). In fact, records indicate "[a] walking program is recommended." Tr. 609. The ALJ noted that by March 2018,

plaintiff reported she was doing very well and had no limitations from her hip. *Id.* (citing Tr. 608); *see also* Tr. 688-89 (October 31, 2018: "She states she has no pain and is actively living life with no issues . . . [S]he is doing extremely well."); Tr. 612 (December 8, 2017: "She describes this as being a life changing event for the better" and is "extremely happy with the outcome so far."); Tr. 610 (February 7, 2018: "noting improvements"); Tr. 608 (March 30, 2018: "noting improvements"). In April 2018, the only restrictions placed on plaintiff were that she could lift 50 pounds occasionally, life 25 pounds frequently, walk/stand 8 hrs in an 8-hour day, and sit 8 hrs in an 8-hour day. Tr. 606-07.

By mid-2018, records indicate it "became clear back was the problem." Tr. 673; *see also* Tr. 680. The ALJ noted that plaintiff began physical therapy to treat her low back pain. Tr. 19; *see* Tr. 675 (indicating plaintiff is an "excellent candidate for physical therapy"). Records also indicate that plaintiff's "[l]ow back and sacroiliac joint pain [were] likely due to hypermobility, muscle weakness, decreased functional stability, poor posture and impaired balance," and that hip weakness, decreased core strength, and decreased proprioception "may be contributing." Tr. 675.

The ALJ noted that, in February 2019, after plaintiff's date last insured of September 2018, she reported her sacroiliac pain had been "doing great for a while," although it was exacerbated when she helped a friend move a lot of boxes from the garage. *Id.* (citing Tr. 679); *see also* Tr. 679 (November 7, 2018: noting "mild symptoms in the low back"); *id*. (September 5, 2018: "She has been doing her exercises which are helpful."); *id.* (June 27, 2018) ("Patient says she is about 90% better."). In fact, during the first quarter of 2019, plaintiff worked as a sales associate at Nest Showroom where she was "for all intents and purposes, like a junior designer

9 – OPINION AND ORDER

and sales associate for furniture, lighting, . . . and home accessories," until she was injured and began receiving workers compensation. Tr. 38.

Thus, after considering the evidence of record, the ALJ determined the limitation to standing/walking four hours out of an eight-hour day and the postural restrictions in the RFC adequately accounted for plaintiff's hip, knee, and back conditions. Tr. 19. The ALJ provided specific, clear and convincing reasons for rejecting the plaintiff's subjective symptom testimony by identifying the objective medical evidence and activities that were inconsistent with plaintiff's testimony. Because the ALJ's findings are supported, they must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (holding if evidence exists to support more than one rational interpretation, the court is bound to uphold the ALJ's findings).

## II.     Medical Opinion Evidence

### A.     Relevant Law

Plaintiff filed for benefits on June 21, 2017. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence under Title II and 20 C.F.R. § 416.920c governs under Title XVI. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(c). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 F ed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has

familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)-(5); 20 C.F.R. § 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(1). "[C]onsistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations require the ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(a), (b); 20 C.F.R § 416.920c(a),(b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-

MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

B.   Whether the "Specific and Legitimate" Standard Still Applies

Under existing Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The regulations pertaining to applications filed before March 27, 2017, set out a hierarchy for treatment of opinion evidence that, consistent with Ninth Circuit case law, gives treating sources more weight than non-treating sources, and examining sources more weight than non-examining sources. *See Standards for Consultative Examinations and Existing Medical Evidence*, 56 Fed. Reg. 36,932, *available at* 1991 WL 142361 (Aug. 1, 1991); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (adopting the "clear and convincing" and "specific and legitimate" standards for rejecting treating and examining source medical opinions); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (holding that "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting

forth specific, legitimate reasons for doing so that are based on substantial evidence in the record).

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations requires re-evaluation of the "specific and legitimate" standard for review of medical opinions. *See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting cases). Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is merely a benchmark against which the Court evaluates that reasoning." *Scott D. v. Comm'r Soc. Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

### C. Dr. Johnson's Opinion

Dr. Johnson completed a medical source statement on October 3, 2019. Tr. 1111-12. In the statement, Dr. Johnson noted that he had treated plaintiff for a period of three to four years for hip arthritis and axial pain. Tr. 1111. He also stated that plaintiff's back, hip, and knee pain could make it "near impossible to walk at times," and that she "has so much pain she is immediately distracted." *Id.* Dr. Johnson responded in the affirmative when asked whether he would expect plaintiff to miss sixteen hours of work or more per month because of her impairments, symptoms, medications, and their side effects, even if she was performing a simple and routine sedentary job. Tr. 1112. According to Dr. Johnson, plaintiff's back "cannot take several hours of standing, sitting, or walking. One fall put her out of work for months. Medication makes her too groggy when taken for pain management. Her work suffers and decisions are impaired." *Id.* Dr. Johnson also opined that plaintiff could lift and/or carry eight to

ten pounds occasionally and no pounds frequently; stand and/or walk fifteen minutes at a time and a quarter hour in an eight-hour day; sit twenty minutes at a time and two hours out of an eight-hour day, although not at one time; never climb, stoop/bend, kneel, crouch, or crawl; and occasionally balance, reach, handle, and finger. *Id.*

The ALJ found Dr. Johnson's opinion was "not persuasive." Tr. 22. First, the ALJ observed that Dr. Johnson's opinion was "unsupported by any objective findings." *Id*. In particular, the ALJ noted that Dr. Johnson provided his October 3, 2019 statement "well after the claimant's date last insured," September 30, 2018. Tr. 22-23. The ALJ also observed that Dr. Johnson's treatment records prior to plaintiff's date last insured "reflect some tenderness but no other findings[,] except shortly before her hip replacement, when she exhibited antalgic gait and guarded range of motion." Tr. 23 (citing Tr. 611, 621, 624, 629, 698, 701, 703, 705-06).

The ALJ further found that Dr. Johnson's opinion was "inconsistent with records from other providers," which contained plaintiff's reports and activities:

> In March 2018, she reported she was doing very well and had no limitations from her hip (Exhibit 1 lF-4). In February 2019, she reported sacroiliac pain had been doing great for a while but was exacerbated by helping a friend move a lot of boxes from the garage (Exhibit 13F-9). The mental and attendance limitations described are inconsistent with the claimant's ability to attend school full-time and earn an associate's degree during the period at issue. The lifting restrictions are inconsistent with the claimant's activities. She carried books while attending school, worked as a private chef and has reported having her own interior decorating business (Exhibits 5F-12, 8F-25, 9F-43, 17F-68). These activities are inconsistent with an inability to do frequent lifting of any weight. The standing, walking and sitting limitations are also inconsistent with the treatment record. In April 2017, she reported she had a really busy weekend and did a lot of walking around Seattle and was a lot more sore afterward. She mentioned that carrying schoolbooks was not helping her symptoms but generally she was feeling stronger (Exhibit 9F-43). In May 2017, she reported another really busy weekend, walking around the Japanese garden, looking in shops, and going to the art museum, where she sat on the floor and sketched and went up and down stairs, which was difficult (Exhibit 9F-40). In June 2017, she reported she was sitting a lot for school and working and studying for finals (Exhibit 9F-25). In August 2017, she indicated that walking across campus was excruciating and at

14 – OPINION AND ORDER

>the end of the day she could barely walk to her car (Exhibit 9F- 14). However, she underwent total right hip replacement in October 2017 and by December 2017, she was able to walk for about an hour before needing to stop for a break (Exhibit 9F-7).

Tr. 23.

Thus, in rejecting Dr. Johnson's opinion, the ALJ satisfied the supportability and consistency consideration and articulation requirements. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Plaintiff argues for a different interpretation of the record, citing portions of plaintiff's medical record does not contradict Dr. Johnson's opinion. Pl. Br. 11-14. However, this court must affirms the ALJ's findings where they are reasonable and supported by substantial evidence. *See Burch*, 400 F.3d at 679 (variable interpretations of the evidence are insignificant if the ALJ's is reasonable).

### III.   Lay Witness Testimony

Finally, plaintiff claims the ALJ erred by ignoring the testimony of her husband and a long-time friend. The new regulations provide that ALJs are "not required to articulate how [they] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d); 416.920c(d). Consequently, there is an argument that ALJs are no longer required to provide reasons that are germane to reject lay witness testimony. *See Wendy J.C. v. Saul*, No. 3:19-cv-01434-AC, 2020 WL 6161402, at *13 n.9 (D. Or. October 21, 2020) ("The new regulations provide the ALJ is 'not required to articulate how [they] considered evidence from nonmedical sources . . . .' 20 C.F.R. §§ 404.1520c(d) (2019), 416.920c(d). As such, the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony.") (alterations in *Wendy J.C.*); *but see Tanya L. L. v. Comm'r Soc. Sec. Admin.*, No. 3:20-CV-00078-BR, 2021 WL 981492, at *7 (D. Or. Mar. 16, 2021) (finding that that § 404.1520c(d) "do[es] not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements").

15 – OPINION AND ORDER

Here, the ALJ did not mention the statements by plaintiff's husband and long-time friend in the decision. But their statements were similar to plaintiff's own subjective complaints. *See* Tr. 221-28, 283-84. Thus, to the extent the ALJ gave clear and convincing reasons supported by substantial evidence to discount plaintiff's subjective complaints, and the statements by plaintiff's husband and long-time friend repeated those complaints, any error by the ALJ in failing to articulate the reasons for rejecting those statements is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (holding that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless).

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  April 27, 2022.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
